GEORGE W. STONE, RECEIVER OF THE CENTRAL MICHIGAN SAVINGS BANK, v. FRANK L. DODGE.

*Banks and banking—Insolvency—Action by receiver—Assignment of deposit—Set-off.*

In an action by the receiver of an insolvent banking corporation organized under Act No. 205, Laws of 1887, against a debtor of the bank to recover a sum due at the date of the suspension of the bank, the defendant cannot set off a certificate of deposit, procured by him from a creditor of the bank after its suspension, and before an application for the appointment of a receiver was made.

Error to Ingham. (Person, J.) Submitted on briefs June 27, 1893. Decided July 25, 1893.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*M. V. & R. A. Montgomery,* for appellant.

*C. P. Black,* for defendant.

McGRATH, J. The Central Michigan Savings Bank was organized under. Act No. 205, Laws of 1887, with a commercial department and a savings department. On the 18th day of April, 1893, said bank, being unable to meet the then current demands upon it, closed its doors, and conducted no business thereafter. On May 4, 1893, the Commissioner of the Banking Department of the State filed a bill in the circuit court of Ingham county, alleging the insolvency of said bank, and praying for the appointment of a receiver for said bank. On May 8, 1893, plaintiff was appointed such receiver, and qualified as such. Plaintiff brought this suit to recover the sum of $3,529.27 due the bank upon the day of its suspension. Defendant was allowed to set off against this claim a certificate of deposit, dated July 19, 1892, for the sum of $4,000, issued to Nellie F. Butler by said bank, and which defendant purchased April 23, 1893, and judgment was rendered for defendant. Plaintiff appeals.

The sole question in the case is whether, in an action by the receiver of an insolvent banking corporation against a debtor of the bank to recover a sum due at the date of the suspension of the bank, the defendant may set off a certificate of deposit, procured by him from a creditor of the bank after its suspension, and before an application was made for the appointment of a receiver.

There can be no doubt that the certificate of deposit in this case would, in a proper case, be a proper subject of set-off. It is well settled that, in a suit by a receiver of an insolvent bank upon a note or obligation due the bank,

the defendant will be allowed to set off his deposit or a certificate of deposit held by him at the time of the suspension of the bank.  *Dickson v. Evans*, 6 Term R. 57; *Pedder v. Preston*, 9 Jur. (N. S.) 496; *Bank v. Rosevelt*, 9 Cow. 409; *Ogden v. Cowley*, 2 Johns. 274; *McLaren v. Pennington*, 1 Paige, 112; *Miller v. Receiver*, Id. 444; *In re Receiver of Bank*, Id. 585; *Smith v. Fox*, 48 N. Y. 674; *Bank v. Tartter*, 4 Abb. N. C. 215; *Berry v. Brett*, 6 Bosw. 627; *Jordan v. Sharlock*, 84 Penn. St. 366; *Farmers' Deposit Bank v. Penn Bank*, 123 Id. 283 (2 L. R. A. 273); *Trust Co. v. Bank*, 9 L. R. A. (Ky.) 108; *Receivers v. Gas-Light Co.*, 23 N. J. Law, 283; *Platt v. Bentley*, 11 Amer. Law Reg. (N. S.) 171; *Clarke v. Hawkins*, 5 R. I. 219.

None of these cases, however, support the defendant's contention.  Indeed, so far as the question here involved is discussed, they are opposed to that contention.  In *Smith v. Fox, Jordan v. Sharlock, Bank v. Tartter, Clarke v. Hawkins, Receivers v. Gas-Light Co.*, and *Platt v. Bentley*, defendants were allowed to set off amounts which they had on deposit at the time of the bank's suspension.  In *Clarke v. Hawkins*, however, the court expressly held that—

"The sum of $667, claimed by the defendant against the bank as a bill-holder to that amount, cannot be allowed to him in set-off; the whole of the bills, so far as we can learn from the evidence, having been purchased by him subsequent to the injunction against the bank, at a discount of 50 cents on the dollar.  The injunction against the bank, like the death of the deceased insolvent (*Irons v. Irons*, 5 R. I. 264), must at least fix a period back of which claims against either cannot be purchased, carrying with them the equitable right of set-off against the claims for which the purchaser is liable to the estate of the insolvent bank or of the insolvent decedent in the hands of their respective administrators."

In *Dickson v. Evans*, Lord Kenyon says:

"It would be most unjust, indeed, if one person who happens to be indebted to another at the time of the

bankruptcy of the latter were permitted by any intrigue between himself and a third person so to change his own situation as to diminish or totally destroy the debt due to the bankrupt by an act *ex post facto*. In cases of this sort the question must be considered in the same manner as if it had arisen at the time of the bankruptcy, and cannot be varied by any change of situation of one of the parties."

Ashhurst, J., in the same case, says :

"Much fraud and great injustice would be introduced if any other rule than that laid down by Lord Kenyon were to prevail."

Grose, J., adds the following:

"One object of the act was to prevent a debtor of the bankrupt going about the country for the purpose of purchasing the bankrupt's notes after the bankruptcy, and then pretending that he was a creditor at the time of the bankruptcy."

In *Pedder v. Preston*, the corporation of Preston opened an account at plaintiff's banking house, and afterwards, becoming invested with the functions of a board of health, opened a second account. Plaintiff's bank stopped payment. One of the accounts was overdrawn, and suit was brought to recover the amount of the overdraft. Held, that the other account owned by the same municipality could be set off.

In *Bank v. Rosevelt*, it was held that a set-off existing against a bank *when it stops payment* is allowable, but bills obtained by the debtors of a bank after it has stopped payment, though before a receiver is appointed, are not admissible as a set-off.

*In re Receiver of Bank* is to the same effect.

In *McLaren v. Pennington*, the court say:

"In relation to the set-off, there can be no doubt of his equitable right to be allowed for any demand which he had against the bank at the time of the repeal of its charter. If he has purchased up bills of the bank, or pro-

cured the assignment of other claims, since that time, he cannot avail himself of them as a set-off, but must come in for his distributive share with the rest of the creditors."

In *Miller v. Receiver*, Miller had a deposit in the bank in his name, and also held $1,150 of the bills of the bank, drawn from the bank on his account before the bank stopped payment, and the court held that the debtor was entitled to any equitable set-off which he had at the time when the bank stopped payment.

In *Ogden v. Cowley*, in a suit brought on a note by the assignee of a bankrupt, it was held that the defendant could not set off a check issued by the bankrupt, bearing date before the bankruptcy, without further proof that the check came into his hands prior to the bankruptcy.

In *Berry v. Brett*, plaintiff was receiver of an insurance company, which, in the course of its business, had liquidated the claim which defendant sought to offset.

In *Farmers' Deposit Bank v. Penn Bank*, at the time of its suspension, the Farmers' Deposit Bank (defendant below) held the check of the cashier of the Penn Bank.

In *Trust Co. v. Bank*, the bank, to which plaintiff's assignors were indebted, was allowed to apply the deposits sued for to the liquidation of that indebtedness.

The only case called to my attention which goes to the extent of the claim made by counsel for the defendant is that of *Moseby v. Williamson*, 5 Heisk. 278. The case was decided upon the ground that under the bankrupt law a banker was not insolvent unless he "stops or suspends *fraudulently* for a period of 14 days;" and, "in analogy to this rule as to bankruptcy," the court were unable to see "upon what ground the insolvency of a bank can be assumed from the simple fact of closing its doors for two or three days, or until some such step as filing a bill to have its insolvency determined has been taken."

In the case of *Smith v. Mosby*, 9 Heisk. 501, the same

court held that when a defendant, who is sued upon a note
by the receiver of an insolvent bank, which has failed,
and filed a bill asking to be wound up, offers as a set-off
a certificate of deposit given by the bank, the burden is
upon him to show that he received it previous to the filing
of the bill by which the assets of the bank were impounded
for the benefit of all its creditors.

In the case of *Marr v. Bank*, 4 Cold. (Tenn.) 471, the
bank in 1862 was removed, by order of the Confederate
officers commanding at Memphis, further south. After the
war the assets of the bank, amounting to $25,000, were
brought back, and were held by the officers of the bank,
but they did not assume to continue the business of the
bank. In the mean time complainant had recovered judg-
ments against the bank upon the notes or bills of the bank,
aggregating $27,321. Executions had issued upon these
judgments, which had been returned *nulla bona*, and com-
plainant sought by bill in equity to obtain a discovery, and
the application of the assets to the payment of his judg-
ments. The court, however, held that the bank was
insolvent; that its assets were held by the officers of the
bank in trust for all the creditors, and that no diligence
on the part of a single creditor could defeat the right of
the others to a *pro rata* distribution of the fund.

I have been unable to discover any statute in Tennessee
similar to our own relating to the winding up of the affairs
of a banking corporation, or restricting the right of the
corporation after an act of insolvency. The insolvency
of corporations does not generally, of itself, extinguish the
power of the company to manage its assets, or fix the
lien of creditors upon the specific property in hand. Mor.
Priv. Corp. § 786. A corporation, being a person in law,
has the same rights, and is subject to the same obligations,
as an individual, unless the act of incorporation varies
those rights and liabilities. Persons dealing with a corpo-

ration whose powers are restricted by its organic law are charged with a knowledge of such limitations, and are bound thereby. The act under which the bank in the present case was organized subjects banking corporations to State supervision. It regulates the manner in which the business shall be done. A commissioner is provided for, and every bank organized thereunder is subject to the inspection and supervision of such commissioner. Upon the refusal of a bank to submit its books, papers, and concerns to inspection, such commissioner may institute proceedings for the appointment of a receiver. A bank desiring to go into liquidation must first give notice to the commissioner. No consolidation of banks can be had without the consent of the commissioner.

Section 55 provides that—

"On becoming satisfied that any bank has refused to pay its deposits in accordance with the terms on which such deposits were received (if received in accordance with the provisions of this act), or that any bank has become insolvent, or that its capital has become impaired, or that any bank has violated any of the provisions of this act, or for any cause hereinbefore or hereinafter stated, the Commissioner of the Banking Department may forthwith, with the approval of the Attorney General, apply to a court of record of competent jurisdiction for the appointment of a receiver for such bank, who, under the direction of such court, shall take possession of the books, records, and assets of every description of such bank, collect all debts, dues, and claims belonging to it, and sell or compound all bad or doubtful debts, and sell all the real and personal property of such bank on such terms as the court shall direct, and may, if necessary to pay the debts of such bank, enforce all individual liability of the stockholders. Such receiver shall pay over all money so collected or received to the State Treasurer, and also make report to the commissioner of all his acts and proceedings."

Upon the appointment of the receiver it is made the duty of the commissioner to cause notice to be published,

calling upon all persons having claims to present the same to the receiver.

Section 57 provides for dividends under the direction of the commissioner, and requires the receiver to make ratable dividends of the moneys realized by him on the claims proven and determined, and the remainder of the proceeds, if any, after the costs and expenses of such proceeding and all debts and obligations of the bank are satisfied, shall be paid over to the stockholders.

Section 47 provides that—

"All transfers of notes, bonds, bills of exchange, or other evidences of debt owing to any bank, or of deposits to its credit, all assignments of mortgages, or other security on real estate, or judgments or decrees in its favor, or deposits of money, bills, or other valuable things for its use, or for the use of its stockholders or creditors, all payments of money, either after the commission of an act of insolvency or in contemplation thereof, with a view to prevent application of its assets in the manner prescribed in this act, or with a view to the preference of one creditor over another, shall be held to be null and void."

The primary purpose of these provisions is the protection of depositors and other creditors, and the provisions of the act should receive a liberal construction to effectuate that object. The object of section 47 is to secure a proportionate division of the assets of the bank between its creditors, and to prevent preferences. By force of this section, upon the commission of an act of insolvency the assets of the bank become actually impounded for the benefit of creditors. If a debtor can connive with his particular friends who may happen to have deposits in the bank (and a number of the debtors might do the same thing), the very object of this provision may be frustrated. It cannot be contended that the officers of the bank, after its suspension, could have received this certificate of deposit, and surrendered defendant's obligation. That obligation was an asset of the bank, and the effect of that

transaction would have been to prevent its application in the manner provided by the act. The law will not allow or compel the receiver to do what it expressly prohibits the bank from doing. *Diven v. Phelps,* 34 Barb. 224; *Bank v. Taylor,* 56 Penn. St. 14.

In *Diven v. Phelps,* the bank suspended business, closed its doors, and was insolvent on the 21st of September. The receiver was appointed November 9 following. In the mean time defendant had procured certain bills of the bank, which he undertook to offset to a claim in favor of the bank. The court say:

"The bills, having been obtained by the defendant after the bank had suspended and become insolvent in fact, could not, I think, be used as a set-off. * * * The bank could not then have paid this demand in any way. It was absolutely prohibited by statute from doing so. * * * If the bank, before the appointment of the receiver, had given up the defendant's note in satisfaction of his claim as holder of the bills, the transaction would have been void, and the note thus given up might have been recovered of the defendant as part of the assets belonging to such bank or the creditors thereof. * * * Before the defendant procured his bills, the bank held the note against him, and, the latter being insolvent, the note belonged equally to all the creditors of such bank. If the defendant could be allowed to purchase or receive the bills of the insolvent bank, and with them satisfy, and thus take from the assets, this amount, or any other, the policy of the statute, which is to secure perfect equality among all the creditors of insolvent corporations of this description, would be entirely defeated."

In the course of the opinion the court refer to 1 Rev. Stat. p. 591, § 9. That section is as follows:

"No such conveyance, assignment, or transfer, nor any payment made, judgment suffered, lien created, or security given, by any such corporation when insolvent, or in contemplation of insolvency, with the intent of giving a preference to any particular creditor over other creditors of the company, shall be valid in law; and every person receiving, by means of any such conveyance, assignment, transfer, lien,

security, or payment, any of the effects of the corporation, shall be bound to account therefor to its creditors or stockholders, or their trustees, as the case shall require."

In the case of *Bank v. Taylor*, defendant owed the bank $35,000. One Rynd had in the bank a deposit of $44,000. The bank, being insolvent, stopped payment. The next day Rynd assigned his deposit to Taylor. Held, that Taylor could not set off the deposit against his indebtedness to the bank, as it would give a preference to one creditor of the bank after the act of insolvency. The court discuss the act of Congress of June 3, 1864, and especially section 52 of that act, which is substantially the same as section 47 of our own statute, above quoted. The court say:

" The bank is a creature of the act, dependent upon it for all its powers, and controlled by all the restrictions which the act imposes. * * * It provides a system for closing the affairs of an insolvent bank, the clear design of which is to place all creditors, except the government and note holders, on an equal footing. Its purpose is to disallow preference of one creditor over another, and it denies the power to make such preference at any time after an act of insolvency." Section 52, read in connection with section 50, " admits of no doubt that the purpose of Congress was to secure all the assets of the bank existing at the time of its act of insolvency for ratable distribution. We cannot assent to the argument that it was intended for no more than to avoid all acts of the bank itself, all voluntary transfers by it of its notes, bonds, deposits, etc., with a view to giving preferences. Its language is general, as applicable to legal as to voluntary transfers. But if the deposit made by Rynd can be set off against the bond debt due by Taylor to the bank, what is it but a transfer of the bond debt to the satisfaction of a creditor, thus giving him a preference? It is not contended that the bank was not prohibited from doing this, but it is insisted the transfer may be accomplished by an adversary proceeding at the suit of Rynd for the use of Taylor. It is not denied that Rynd, had he made no assignment of his claim, could not have obtained payment of the debt due him by calling upon the bank after

its doors were closed, and when it suspended payments. The bank, it is conceded, was not at liberty to transfer to him either their claim against Taylor or any of their assets, or to pay him any money; and, if so, can the thing be secured by a hostile proceeding? Will the law compel a payment or a transfer which the law prohibits a debtor from making? * * * If Rynd could in no way have obtained payment of the deposit due him except through the comptroller of the currency, how could he give to Taylor, by his assignment of the deposit, any right which he did not himself possess?"

It is not pretended that the bank was not insolvent in fact at the time it suspended payment. In *Bank v. Taylor* the only evidence of insolvency was the suspension of the bank. In *Diven v. Phelps, supra,* it was held that under the statute cited a recovery might be had whether the party receiving the payment knew of the insolvency or not. *Brouwer v. Harbeck,* 9 N. Y. 589 ; *Robinson v. Bank,* 21 Id. 406.

It was held in *Gillet v. Moody,* 3 N. Y. 479, that stopping payment is of itself sufficient evidence of the insolvency of a bank, and when there is nothing to rebut the presumption the evidence of insolvency is conclusive.

In *Dodge v. Mastin,* 5 McCrary, 411, it was held that the ordinary acceptation of the term "insolvent," when applied to a bank, means "inability to meet liabilities in the usual course of business."

In *Markson v. Hobson,* 2 Dill. 330, it is said : "A bank suspending payment and closing its doors against its creditors makes to the world a proclamation of its insolvency."

"Insolvency" is frequently defined as inability to make payments as usual, or as they mature, or according to the undertaking, or in the ordinary course of business. Webst. Unabridged Dict.; Anderson, Dict. 552; Wait, Insolv. Corp. § 28; *Bayly v. Schofield,* 1 Maule & S. 338; *Sacry v. Lobree,* 84 Cal. 41; *Walton v. Bank,* 13 Colo. 265, 272; *In re Dalpay,* 6 L. R. A. 108, and note.

Whatever may be the rule as to when a bank may be said to be insolvent, the closing of its doors and suspension of its business must be deemed *prima facie* evidence of insolvency, and it is clear that such an act is "an act of insolvency," under section 47, above given. In the present case, at the time of the transfer of the certificate the bank had remained closed for a period of five days.

The judgment must be reversed, and judgment entered here for plaintiff, with costs of both courts.

The other Justices concurred.