## GENERAL DISCOUNT CORPORATION v. FIRST NAT. BANK–DETROIT et al.
### No. 12994.

District Court, E. D. Michigan, S. D.
Dec. 22, 1933.

Oxtoby, Robison & Hull, of Detroit, Mich., for plaintiff.

Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio (Robert S. Marx and Lawrence I. Levi, both of Cincinnati, Ohio, of counsel), for receiver.

KNIGHT, District Judge.

The General Discount Corporation was organized October 28, 1932. It took over the assets and liabilities of the Federal Discount Corporation and the Republic Corporation. The Federal Discount Corporation had three subsidiaries, to wit: Federal Finance Company, Main Sales Company, and Green Agency, Inc. The General Discount Corporation and these subsidiaries each had funds on deposit on February 11, 1933, in the First National Bank, which was on that day closed under the moratorium proclamation of the Governor of the State of Michigan, and remained closed till May 11, 1933, when it was declared insolvent.

The General Discount Corporation was indebted to the First National Bank in the amount of approximately $70,000, and had on deposit approximately $45,000, which was applied on its indebtedness to the bank. There was also on deposit to the credit of the Federal Discount Corporation $1,136.15; to that of the Federal Finance Company, $1,369.33; that of the Green Agency, Inc., $5,650.95 and that of Main Sales Company, $370.11. The plaintiff asks that each of these other deposits be set off against plaintiff's indebtedness. Assignment was made of the Federal Discount Corporation deposit to the General Discount Corporation on or about November 30, 1932. It apparently was left on deposit to the credit of the Federal Discount Corporation. The amount was not increased. While the defendant bank was not notified of any assignment, it is not questioned, and as the right of no one else is affected, notice was not necessary. The amount of the deposit of the Federal Discount Corporation should be allowed as a set-off against plaintiff's debt to the bank.

The Federal Discount Corporation had advanced a considerable sum of money to a certain loan agency that operated what is known as the "Small Loan Act of Michigan." This act (Comp. Laws 1929, § 12198 et seq.) authorized and fixed terms for loans of $300 or less. Such loan agency had pledged certain loans as security for advances made by the Federal Discount Corporation. The Federal Finance Company was organized both to take over the collection of these collateral loans and continue in the making of the small loans under aforesaid act. The Green Agency, Inc., was incorporated as an insurance company. It is claimed that it was organized for the purpose of writing insurance on chattels pledged with the Federal Discount Corporation. Its authority, however, was not limited to that purpose. The Main Sales Company was incorporated to engage in the retail sales business. It took over the business of another company obligated to the Federal Discount Corporation. It engaged in the sale and repair of automobiles and conducted its sales business at a place other than the place of business of the plaintiff.

Neither the Federal Discount Corporation nor the General Discount Corporation was authorized to do any of the business in which any subsidiary was authorized to engage.

The evidence shows that these several corporations were inter-related in the sense that the business actually done by each was in a sense supplemental to the business of each other one. However, none was restricted to this.

The plaintiff owned approximately all of the stock in the subsidiaries, and the directors of the subsidiaries were substantially the same. Each corporation kept separate books of record and separate books of account. Except as to Green Agency, Inc., the business of the subsidiaries was conducted in the offices of plaintiff and by employees of the plaintiff. Each corporation had its separate bank deposits, and all of the business of each subsidiary was conducted in its own corporate name. The record does not disclose that the bank was advised of the special purpose for which plaintiff claims these subsidiaries were incorporated.

The test of liability in this suit is whether there is mutuality in the demands between the parties thereto. Such mutuality means the right of each to maintain suit against the other upon its demand. In the early case of Scammon v. Kimball, 92 U. S. 362, 367, 23 L. Ed. 483, it is said: "Set-off must be understood as that right which exists between two parties, each of whom, under an independent contract, owes an ascertained amount to the other to set off their respective debts by way of mutual deduction, so that, in any action brought for the larger debt, the residue only, after such deduction, shall be recovered."

■ This rule as regards set-off has uniformly been upheld in the decisions of the courts. Gray v. Rollo, 85 U. S. (18 Wall.) 629, 21 L. Ed. 927; The Zouave (D. C.) 29 F. 296; Moore v. McGrawl (C. C. A.) 63 F.(2d) 593; Dakin, Receiver, v. Taver Bayly, Liquidator, 54 S. Ct. 113, 78 L. Ed. ——; 57 C. J., § 40, p. 387. It is likewise true that such mutuality must have existed at the time of the suspension of the bank. Stone v. Dodge, 96 Mich. 514, 56 N. W. 75, 21 L. R. A. 280; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059.

Plaintiff concedes that there must be such mutuality of indebtedness and claims that it is shown in the instant case.

■ The theory of the plaintiff is that plaintiff was the real principal and each subsidiary its agent, and therefore there is mutuality in the debts. This position is not sound. Even if plaintiff were the principal, it was an undisclosed principal. The evidence discloses that these subsidiaries held themselves out both to the defendant bank and the public as principals. The subsidiary would, therefore, be liable on a debt which it owed to the bank, and the bank likewise liable to it. Mutuality could not exist both as to the plaintiff and the bank, and the bank and the subsidiary. Equal right in each implies equal rights of action, election or option.

■ Every corporation is an entity in and of itself and as such a thing separate from its stockholders. In re Watertown Paper Co. (C. C. A.) 169 F. 252, 258; United States v. Milwaukee Refrigerator Transit Co. (C. C.) 142 F. 247; Elenkrieg v. Siebrecht, 238 N. Y. 254, 144 N. E. 519, 34 A. L. R. 592; Green v. Victor Talking Machine Co. (C. C. A. 2d) 24 F.(2d) 378, 59 A. L. R. 1091.

In case of fraud perpetrated by a principal through a subsidiary, the courts will, at the instance of a defrauded party, disregard the fiction of a distinct corporation. The principles on which such actions are based are fundamental. The application of this rule is at the election of the party defrauded. No fraud is claimed here, and therefore the rule has no relevancy.

■ It is likewise true, as asserted by the plaintiff, that a corporation may be "so organized and controlled * * * as to make it merely an instrumentality or adjunct of another corporation." In re Watertown Paper Co. (C. C. A.) 169 F. 252.

Except in certain cases such as DeForest Radio & T. & T. Co. v. Radio Corp. of America (C. C. A.) 20 F.(2d) 598, involving certain acts of third party, the corporation itself cannot claim the benefit of transactions of a subsidiary to the damage of a third party. So in this case whatever the relation of the plaintiff and its subsidiaries between themselves may have been, the defendant dealing with the subsidiary as a principal, upon the facts found, is in no wise affected by such relation. Exchange National Bank of Spokane v. Meikle (C. C. A.) 61 F.(2d) 176; Chicago, Milwaukee & St. Paul Ry. Co. et al. v. Minneapolis C. & C. Ass'n, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229; Bachrach v. Allen, 239 Mass. 272, 131 N. E. 857; Hunter v. Baker Motor Vehicle Co. (D. C.) 225 F. 1006, 1016. The court said in the last-mentioned case: "When, as here, these adjuncts are used as mere agents for all purposes, except the payment of their just debts, the liability of the real managing and controlling corporation is neither released nor shifted, unless by some arrangement or agreement made by the creditor with knowledge of the facts, so as to create either an estoppel or ratification. Any other rule, adopted or sanctioned by the courts, not only defeats justice, but opens the door for the perpetration of the grossest frauds." The same language is applicable to a subsidiary. Permitting the plaintiff to offset deposits of its subsidiaries against its own liability to the defendant would affect the rights of stockholders and depositors of the defendant.

The Watertown Case, hereinbefore mentioned, involved a claim between corporations alleged to be in legal effect one corporation. Concluding its opinion the court said: "This case seems clearly to come within the general rule that the distinct corporate existence of two separate although associated corporations will be regarded by the courts."

The plaintiff and its subsidiaries had distinct corporate existences.

The plaintiff should be allowed a set-off in the amount of the deposit of the Federal Discount Corporation, and the complaint should be dismissed as to the deposits of the other subsidiaries.

Let judgment enter accordingly.