FEUCHT ET AL. *v.* REAL SILK HOSIERY MILLS, INC.

[No. 15,729. Filed February 15, 1938. Rehearing denied May 10, 1938. Transfer denied June 7, 1938.]

*John G. Rauch* and *Thompson, Rabb & Stevenson,* for appellants.

*Bamberger & Feibleman* and *Julian Bamberger,* for appellee.

LAYMON, C. J.—This action was instituted by the American National Bank at Indianapolis [successor to The Fletcher American National Bank pursuant to a reorganization agreement] against appellee to recover upon a promissory note executed by appellee and payable to The Fletcher American National Bank. After the commencement of the action, and before final judgment, appellants were substituted by the trial court as parties plaintiff.

The complaint was in one paragraph, to which were filed answers in general denial, plea of payment, and a plea of set-off, in which appellee sought to set off against the note sued upon a deposit in The Fletcher American National Bank in the name of Trojan Hosiery Mills, Inc. The cause was tried by the court without a jury, and upon request the court made a special finding of facts. Upon these findings the court stated the following conclusions of law:

"1. Defendant is indebted to plaintiffs upon the note in suit in the sum of $12,242.09.
"2. The liability of The Fletcher American National Bank of Indianapolis to Trojan Hosiery Mills, Inc., for a deposit balance in the sum of

"$12,242.09 constitutes a valid set-off applicable to the balance due upon said note."

Judgment was rendered in accordance with the conclusions of law. Appellants excepted to the second conclusion of law and in due time filed their motion for a new trial, which was overruled, and this appeal followed. Appellants have assigned as error for reversal: Error of the court in its second conclusion of law and error of the court in overruling the motion for a new trial. The grounds in the motion for a new trial are that the decision of the court is not sustained by sufficient evidence and that the decision is contrary to law.

The evidence consisted of a stipulation of facts, the substance of which is as follows: American National Bank at Indianapolis is a national bank with its principal place of business in the city of Indianapolis, Ind. The Fletcher American National Bank of Indianapolis is a national bank which did business at Indianapolis prior to, but not after, August 23, 1933. Real Silk Hosiery Mills, Inc., appellee, is an Illinois corporation manufacturing silk hosiery and products with its executive office and mills in the city of Indianapolis. The Real Silk corporation and its predecessors have been engaged in the manufacture of silk hosiery and products in Indianapolis since 1918, selling direct to the public and subsequently developing a wholesale trade to department stores under the name of "Trojan." On the 18th day of July, 1929, the Real Silk corporation caused the Trojan Hosiery Mills, Inc., to be incorporated as an Indiana corporation, with its principal office and place of business in the city of Indianapolis. The Trojan corporation did not engage in manufacturing and had no liabilities and assets except as hereinafter mentioned. From time to time the Real Silk corporation made financial reports to the Fletcher bank, and in such reports frequently referred to the Trojan corporation as a selling agency.

As merchandise was sold and invoiced under the name of and through the Trojan corporation, checks and remittances were received under the latter name. On the 16th day of September, 1931, the board of directors of the Trojan corporation adopted a corporate resolution and caused a certified copy of this resolution to be transmitted to the Fletcher bank, accompanied by a letter from the president of the Trojan corporation stating in substance that said corporation was forwarding a resolution adopted at a meeting of the board of directors, authorizing the opening of a general account and giving a list of the persons authorized to sign checks against this account. The resolution reads as follows:

"RESOLVED, that the Fletcher American National Bank is hereby designated a depository for funds of Trojan Hosiery Mills, Inc., in an account to be known as General Account and the Fletcher American National Bank is authorized to honor checks against this General Account when signed in the name of Trojan Hosiery Mills, Inc., by any two of—[the names of five individuals follow] provided such checks are countersigned by G. B. Carson, Comptroller." [A certificate by the president to the resolution follows.]

Checks and remittances to the Trojan corporation were endorsed for deposit and deposited at said bank in the account under the name of the Trojan corporation. From time to time checks were drawn against the Trojan corporation deposit and transferred to the Real Silk corporation deposit. Checks were also drawn by the Trojan corporation against its own account to meet its pay roll and for other minor purposes. Among the reports furnished the Fletcher Bank by the Real Silk corporation was the annual report of the auditor of the Real Silk corporation for the year 1932, which report was substantially similar in form and in content to the other reports. This annual report listed the subsidiary companies of the Real Silk corporation but did not refer

to the Trojan corporation as a subsidiary. This report referred to "Trojan Division," "Operating Profit," "Gross Profit," "Operating Expenses," "Net Operating Profits of the Trojan Division," "Trojan Net Sales," "Trojan Numbers," referring to styles; and under the caption "Due from Employees Real Silk Hosiery Mills, Inc., December 31, 1932" was a sub-heading, "Due from Trojan Employees"; and under the heading included in such report "Comparison of shipments, unit costs, and selling prices Real Silk Hosiery Mills, Inc.," containing comparative figures for the years 1931 and 1932, were "C. O. D." and "Wholesale Trojan," referring to the business done with the trade under the name of "Trojan." Said annual report contained "Comparative statement of shipments Real Silk Hosiery Mills, Inc.," including C. O. D. shipments and Trojan shipments. At the time of the adoption of the resolution by the Trojan corporation heretofore referred to, the five individuals designated by such resolution as having authority to issue checks against the Trojan corporation account (provided such checks were countersigned by the comptroller) were the officers of the Real Silk Hosiery Mills, Inc., consisting of the president, chairman of the board of directors, treasurer, secretary, and secretary to the president. On June 8, 1931, the Real Silk corporation owed banks in Indianapolis and New York City several thousand dollars, and an agreement was entered into by these banks and the Real Silk corporation providing chiefly for the extension and gradual reduction in payment of certain notes under the supervision of a committee representing the banks. A supplementary agreement was executed on June 8, 1932, as to the amounts then owing. Pursuant to the agreements and for the reduced amount then owing, appellee, on December 8, 1932, executed to the Fletcher bank the note referred to in the complaint. The Fletcher bank was

closed during the national bank holiday in 1933 and did not thereafter receive a license from competent authority to reopen for the transaction of business upon an unrestricted basis, but did reopen under restrictions imposed by competent federal authority and accepted deposits subject to withdrawal without restrictions until the 23rd day of August, 1933, at which time it ceased to engage in the banking business pursuant to a plan of reorganization which was approved by federal authority and on that date put into operation. On August 23, 1933, when the Fletcher bank ceased to engage in the banking business, it was indebted to the Trojan corporation in the sum of $24,484.17 on a deposit balance not subject to withdrawal by reason of restrictions imposed by competent federal authority. The Real Silk corporation unsuccessfully attempted to pay the balance due upon the note in question by the use of the restricted balance of the Trojan deposit in the name of the Trojan corporation in the Fletcher bank. Pursuant to the plan of reorganization of the bank the creditors and depositors agreed to accept the obligation of a new bank to be known as the American National Bank at Indianapolis, in lieu of 50 per cent of their claims, and for the remaining 50 per cent they agreed to accept a certificate of interest in the assets of the Fletcher bank to be liquidated under a trust indenture of the same date.

The principal question for determination is whether or not the deposit with the Fletcher American National Bank in the name of the Trojan Hosiery Mills, Inc., can be set off against a note owing by the Real Silk Hosiery Mills, Inc., to said bank. Since the facts have been stipulated and are undisputed, the question becomes one of law for this court to decide.

Appellee asserts its right of set-off on the ground

that the facts entitle appellee to an equitable set-off.

Appellant accedes to the rule adhered to by the courts of this state that a court of equity will take cognizance of cross-demands between litigants, though wholly disconnected and wanting in mutuality, and set off one against the other whenever it becomes necessary to effect a clear equity or prevent irremediable injustice. *Porter* v. *Roseman* (1905), 165 Ind. 255, 74 N. E. 1105.

It is also recognized in principle that the fiction of corporate entity may be disregarded where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation. *Trustees System Co. of Pennsylvania* v. *Payne* (1933), 65 Fed. Rep. (2d) 103.

Courts have had no hesitancy in applying this principle in determining the rights as between corporations coming within the rule, but in cases involving the rights of third persons, this doctrine has been limited in its application to the prevention of fraud or injustice. See *General Discount Corp.* v. *First Nat. Bank-Detroit* (1933), 5 F. Supp. 709 [D. C. Mich.]; *State* v. *Weston Bank* (1933), 125 Neb. 612, 251 N. W. 165; *Security Savings & Trust Co.* v. *Portland Flour Mills Co.* (1928), 124 Ore. 276, 261 Pac. 432.

In the case of *General Discount Corp.* v. *First Nat. Bank-Detroit, supra,* the court had before it a question similar to the one in the instant case and said (p. 711) : "In case of fraud perpetrated by a principal through a subsidiary, the courts will, at the instance of a defrauded party, disregard the fiction of a distinct corporation. The principles on which such actions are based are fundamental. The application of this rule is at the election of the party defrauded. No fraud is claimed here, and therefore the rule has no relevancy."

In the case of *Security Savings & Trust Co.* v. *Portland Flour Mills Co., supra*, in which a similar question was also involved, the court said (p. 288) : "There are cases where, in order to prevent fraud or injustice, it is necessary to disregard the fiction of a distinct corporate existence, as where one corporation is so organized and controlled and its affairs are so conducted as to make it a mere instrumentality, conduit, or adjunct of another corporation, or where a corporation is fraudulently organized to take over the assets of another corporation in order to defraud its creditors."

Applying these principles to the instant case leaves for consideration and determination the question of whether or not the facts, as stipulated by the parties, warrant the application of the doctrine of equitable set-off.

Appellee contends that inasmuch as the Trojan corporation was, in fact, a distinct selling agency or adjunct of the Real Silk corporation, the court should disregard the corporate fiction and merge the identities of the two corporations so as to permit the set-off in question.

It is apparent from the facts disclosed by the record that appellee, in its dealings with the bank, regarded the deposit here involved as a separate and distinct deposit of the Trojan corporation and treated the Trojan corporation as a separate corporate entity, insofar as the deposit in question was concerned. It may be said that the appellee regarded the Trojan corporation as a sales agency or as a department of its corporation in its general business activity. Appellee, however, should not be aided in equity, in claiming the deposit in question as a set-off, due to the fact that the Trojan corporation, on the 16th day of September, 1931, adopted a corporate resolution designating the bank as a depository for the

funds of the Trojan corporation and limiting the power and authority of the bank to a withdrawal of the funds so deposited to checks drawn thereon and signed by a requisite number of designated parties, and this resolution was particularly called to the attention of the bank by a letter from the president of the corporation.

Furthermore, since August 23, 1933, at which time the bank ceased to engage in banking business and a plan of stabilization and reorganization authorized by competent federal authority was approved and effected, the rights of the bank's creditors have intervened. To permit the appellee to offset deposits of its subsidiaries against its own liability to the appellant [successor in interest to the Fletcher bank] would affect the rights of stockholders and depositors of the bank. Under the circumstances, as here presented, the equity of the respective creditors of the bank is superior to any equity of appellee existing between it and the Trojan corporation. Equity will not do injustice to the creditors of the bank in order to convenience appellee or relieve appellee from a situation of its own making.

"But there will be a grant of the remedy only for the purpose of securing an equitable result, and not where its allowance would work an injustice to others having equal equities." 24 R. C. L. 805.

Appellee asserts, "We do not undertake to say that any fraud is involved on the part of the bank; the question is merely one of fair dealing." To answer this assertion, may it be said, if an offset were permissible in this case it would not be difficult for a corporation to insure itself against the bank applying the deposits upon the corporation's notes owing to the bank, by the simple maneuver of having its own deposits in the name of separate and distinct persons or corporations. By this means it would be possible to perpetrate a fraud upon

the other depositors and creditors of the bank who have dealt with the corporation and whose rights intervene at the time the bank ceases to do business and goes into liquidation. It would be inequitable, as against the rights of the creditors and depositors of the bank, to permit appellee to assert that the Trojan corporation deposit was, in law and in fact, a Real Silk corporation deposit by virtue of a relationship between the two corporations, not contractual in its nature and known only to the two corporations and the bank. Especially would this be true when the bank's authority with reference to the deposit in the name of the Trojan corporation was restricted and limited by the resolution adopted by the Trojan corporation and certified to the bank. Under such an arrangement, had the bank permitted funds to be withdrawn from the Trojan deposit on a check drawn by the Real Silk corporation, or by anyone other than the persons designated in the resolution, the bank would have been liable. The arrangement between the Real Silk corporation and the Trojan corporation in carrying separate deposits and accounts with the Fletcher bank could only be for the sole benefit and convenience of the Real Silk corporation. Such relationship existing between the two corporations, even with knowledge on the part of the bank, is not sufficient to invoke the doctrine of equitable set-off as against the rights of third parties.

"So where one claims the right to an equitable set-off, the court will infer nothing in favor of his claim, but the relief being purely equitable, and beyond that given by the statutes of set-off, the party asking it must affirmatively show the existence of those facts necessary to raise the equity; and equity requires something more than a prima facie case upon which to act, in cases requiring a departure from the statute in affording the remedy." 24 R. C. L. 879.

We conclude that the facts as disclosed by the record

are not sufficient to invoke the doctrine of equitable set-off.

The judgment of the trial court is reversed, with directions to restate its second conclusion of law, disallowing the set-off, and to render judgment accordingly.