No. 11,572.

## ELVERSON ET AL. *v.* LEEDS ET AL.

PARTNERSHIP.— *Use of Firm Name by Purchaser of Business.— Liability of Prior Member to Creditors.*—Where one is engaged in business under a firm name, and under such name purchases goods for such business from the plaintiffs from time to time, and afterwards sells the business and property to a son, who thereafter continues such business under such name, and under such name purchases similar goods from the plaintiffs, who have no knowledge of such sale and transfer, the former is liable to the plaintiffs for the goods thereafter purchased by the son from them under such name.

From the Wayne Circuit Court.

*C. E. Shively* and *T. J. Study,* for appellants.

*H. U. Johnson, G. S. Needham* and *R. A. Jackson,* for appellees.

BEST, C.—This action was brought by the appellants to recover the price of goods sold and delivered. A separate demurrer to the complaint by each appellee was sustained, and this ruling is assigned as error.

The complaint alleges, in substance, that the plaintiffs are, and for five years have been, partners at New Brighton, in the State of Pennsylvania, engaged in manufacturing and selling rose-pots, and other wares, such as are commonly used in green-houses; that from the year 1878 until the 1st day of June, 1882, the said Hannah A. Leeds owned and carried on in the city of Richmond, in this State, a green-house, and was, during that time, and at that place, engaged in raising and cultivating flowers for sale in connection with said green-house; that said Hannah conducted and carried on said business under the name of "Leeds & Co.," and while she carried on said business under said name, she purchased of the plaintiffs, by such name, at divers times, large quantities of rose-pots and other wares manufactured by them, to be used by her in said business; that said goods were ordered by her in such name, and were thus sold and shipped to her; that at

the time such purchases were made, the plaintiffs knew that said Hannah either owned said green-house, and was carrying on said business upon her own responsibility, or was interested therein, and was responsible for all goods purchased under the name of "Leeds & Co.;" "that on or about the 1st day of June, 1882, said Hannah A. Leeds sold, assigned and transferred to William B. Leeds, who is her son, her entire interest in said green-house business, property, goods and wares used in connection therewith, without any notice to the plaintiffs or knowledge on their part of such sale, assignment and transfer," and that said "William B. Leeds immediately thereafter continued and carried on upon, and in the same premises, said business in and under the said name of 'Leeds & Co.,' with the knowledge and consent and approval of said Hannah A. Leeds," who "knew that William B. Leeds was ordering and purchasing goods and wares under and in said name of 'Leeds & Co.,' for the purpose of carrying on said business," and who suffered him to carry on said business under the name of "Leeds & Co.," without any objection upon her part; that after said William B. Leeds became the owner of said green-house, and while he was carrying on said business in the name of "Leeds & Co.," and before the plaintiffs had any knowledge whatever that said Hannah A. Leeds had sold and transferred said green-house and business to said William B. Leeds, the latter, in the name of "Leeds & Co.," ordered of the plaintiffs, on the 14th day, of November, 1882, 62,300 rose-pots, and on the 5th day of December, 1882, 33,700 more, all of the value of $475; that the plaintiffs, from their place of business at New Brighton, shipped said goods to "Leeds & Co.," at Richmond, in this State, where the same were received by said William B. Leeds and used by him in said business; that at the time said goods were shipped the plaintiffs believed that said Hannah A. Leeds was still the owner of said property, and was carrying on said business under such name, or was interested therein, and was liable for

all goods purchased under said name; that said William B. Leeds is insolvent, and that said sum is due and remains wholly unpaid.    Wherefore, etc.

The appellees' counsel do not pretend that this complaint was not sufficient against William B. Leeds.    He ordered the goods, they were shipped to him, received and used by him, and, of course, he is liable for them.    The demurrer by him should, therefore, have been overruled.

The real dispute is whether Hannah A. Leeds is also liable.    The appellants insist that, under the circumstances stated, it was her duty to notify them that she had ceased to do business under the name of "Leeds & Co.," and that her failure to do so renders her liable for the goods in question. This the appellees' counsel dispute.    They insist that since she and her son were not partners, and the relation of principal and agent did not in fact exist between them, she was under no obligation to notify the appellants that she had ceased to do business, and as she did not buy the goods she is not liable to pay for them.    The facts averred do not show that the son was either the partner or the agent of the mother, and if the rule requiring a partner upon retiring from the firm, or a principal upon the termination of an agency, to give notice of such change, rests alone upon the fact of such previous relation, it can not apply to this case, for no such relation appears to have existed.    The rule, however, does not rest exclusively upon such relation, nor has it been thus limited.    It has frequently been applied to persons who in fact sustained no such relation.    For instance, to persons who have held themselves out as partners, and to persons who have held others out as their agents.    In such cases it has been uniformly applied, and the fact of such relation has not been deemed essential to create liability.    Indeed, the rule does not rest upon such pre-requisite, but rather upon the fact that since third parties have been led to believe that a certain condition of things existed, and have extended their credit upon the faith of such assurances, the party making

them shall be bound by them. This rule is generally applied to a retiring partner, not because the former relation existed, nor because the remaining member had in fact any authority to bind him, but because third parties who extend credit upon the faith of such assurance as grows out of the actual or assumed relation, have no notice to the contrary, and to permit him to escape liability would enable him to perpetrate a fraud upon such persons. The consequences that would probably result from the adoption of a different rule is the basis of this one, and we perceive no reason why it should not extend to every case where the conditions and consequences are substantially the same.

A retiring partner sustains no relation to the remaining members that actually authorizes them to bind him; neither did the mother to the son. Such members continue the business in the same name, and so did the son. In these respects the cases are precisely alike. The only difference is that the partner sells a portion, and permits the business to continue, while the mother sells the whole, and permits the business to continue. What possible difference can it make to third parties without notice whether the mother sells a part or the whole, or whether she retires as a partner or sells as owner. In either case the consequences are the same, and we can perceive no reason why she should be liable in one case and not in the other. Third parties are just as likely to lend their credit, and just as liable to be defrauded as though she were a retiring partner; indeed, from a third party's standpoint, she appears as nothing less. She engages in business under a firm name, which imports a partnership, and the business continues under such name, without any notice that she has ceased her connection with it. Why should she not be treated like such partner, and held to the same obligations. The same reasons certainly exist, and as the same consequences may follow, we think the same rules should apply.

In addition to this, we are satisfied that the use of the name by the son, with the mother's " knowledge, consent and ap-

proval," renders her liable to the appellants. The facts averred show that under this name she did business with the appellants, and that they knew that she was "Leeds & Co.," or was liable for the debts contracted under that name. The act of doing business under that name was an unequivocal representation to the appellants that she was "Leeds & Co.," or was liable for debts thus contracted, and the adoption of such name, and the act of doing business with the appellants under it, were, if no one else was represented by the name, tantamount to an assurance that "Leeds & Co." was, in fact, Hannah A. Leeds. Having given the appellants the assurance that "Leeds & Co." was, in fact, Hannah A. Leeds, the son could not thereafter contract with the appellants under such name while they remained in ignorance of the facts, without such act operating as a continued assurance that Hannah A. Leeds was still doing business under the name of "Leeds & Co." When, therefore, the son did business under such name with the appellants, he was continually representing to them that his mother was still doing business under such name, and as the business was done under such name, with the "knowledge, consent and approval" of his mother, it necessarily follows that she permitted him to thus hold her out as doing business under such name. This would, of course, render her liable to the appellants.

We have not been cited to, nor have we found, any case directly in point. There are many, however, quite analogous. Where a firm dissolves, and the retiring partner permits the continued use of his name, he will be held liable for debts thereafter contracted in favor of those who were ignorant of the facts, though notice of dissolution was given. Collyer Part., section 538 ; 1 Lindley Part. 440 ; *Freeman* v. *Falconer*, 12 Jones & S. 132; *Speer* v. *Bishop*, 24 Ohio St. 598.

In such case, after dissolution and after notice, the remaining members of the firm sustain no relation to the retiring partner that will enable them to bind him either among themselves or in favor of third parties. Under such circumstances

the remaining members possess no more power to bind the retiring partner than the son possessed to bind the mother in this case; but if such partner permits the use of his name, he will be bound as though he was in fact a partner. The same principle seems to apply to this case. If the appellants were authorized to regard the name of "Leeds & Co." as the name under which Hannah A. Leeds did business, then the use of such name by the son, with her "knowledge, consent and approval," will bind her as though she was in fact doing business under such name.

It is said, however, that she could not prevent the use of such name. If this were conceded, it is no answer to the averment that he used the name with her "knowledge, consent and approval." If thus done, it was used by her permission. We think the facts stated also render her liable, and that the court erred in sustaining the demurrer filed by her. The judgment should, therefore, be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be and it is hereby in all things reversed, at the costs of the appellees, with instructions to overrule the demurrer filed by each of the appellees.

