CLARKE AUTO CO., INC. *v.* FYFFE, DOING BUSINESS AS VETERAN AUTO SALES.

[No. 18,462.    Filed January 8, 1954.]

*Silas Lipman, Fenton, Steers, Beasley & Klee,* of Indianapolis, and *Eugene B. Burns,* of Lebanon, for appellant.

*Johnson, Zechiel & Weaver,* of Indianapolis, and *Adney & Adney,* of Lebanon, for appellee.

Royse, J.—Appellee brought this action against appellant to recover the purchase price paid by him to it for a 1949 Chevrolet convertible coupe.

The material averments of the complaint may be summarized as follows: Both of the parties are engaged in the automobile business. Appellee purchased from appellant said automobile. At the time of this transaction appellant represented to appellee that the title to said automobile was vested in one Robert J. Allen but that it was the owner thereof and had a legal right to sell same. Appellee paid appellant $1510.00 for said car. Appellee thereafter sold said car to one William R. Webb for $2100.00. Thereafter it developed said automobile was a stolen car and appellant did not and could not transfer any legal title to said automobile. Appellee was forced to and did return to said Webb the sum of $2100.00. To the complaint appellee filed an answer of denial under the rules. Trial to the court resulted in a finding in favor of appellee. Judgment for $1510.00.

The only error not waived assigned here is the overruling of appellant's motion for a new trial. The specifications of that motion are: The decision is not sustained by sufficient evidence and is contrary to law; damages are excessive; amount of recovery is too large; error in admission in evidence of Exhibit 4; and overruling the motion to find for appellant.

Thus, we are required to consider the evidence and the reasonable inferences that may be drawn therefrom most favorable to appellee. We are of the opinion the following facts were established:

For some time prior to November 30, 1949 appellant was an Indiana corporation organized in 1946, of which one Ed Clarke was President, his wife was Vice-President, and Julius I. Salman was Secretary. Its office was at 921 E. Washington Street, Indianapolis.

At such time there was another Indiana corporation organized in 1949 known as Clarke Auto Co. of Indiana, Inc. This corporation had the same officers as appellant and had its office at 1125 North Meridian Street in the city of Indianapolis (hereinafter referred to as the latter corporation). The latter corporation conducted weekly auction sales of automobiles for dealers only. The President of both these corporations as a witness for appellant at first stated the latter corporation never held itself out as Clarke Auto Auction. When confronted with a letter-head and envelope with heading "Clarke Auction Co., 1125 N. Meridian St., Indianapolis, Indiana" addressed to appellee he said the latter corporation did conduct and operate its business under such name. It also had a printed statement which used the term Clarke Company of Indiana, Inc. Both corporations had the same bookkeeper. Appellant's President said the latter corporation cashed all checks and there were a lot of checks written to Clarke Auto Auction, Clarke Sales, or Clarke, Inc., which it cashed.

On November 30, 1949 appellee attended an auction at the North Meridian Street address and purchased for $1510.00 the automobile that is the subject of this litigation. At the same time he purchased another auto not involved here. Appellant's President was present at this auction. After appellee's bid was accepted he went into the office and talked with one of the girls taking care of the titles. He asked her whom the car belonged to so that he would know how to make out the check. She told him "Clarke Auto Co., Inc." He followed these instructions and received the titles. On the reverse side of the check made payable to appellant is the endorsement "For deposit only Clarke Auto Co. of Ind., Inc." The books of the latter company show this check was deposited to its account.

Appellee took the car to his place of business in Portsmouth, Ohio. About one month later he sold it to one William R. Webb for $1795.00. About April, 1950, a representative of the F.B.I. came and told him the car was stolen. He went into the North Meridian Street office and told them the F.B.I. had said it was a car stolen out of Chicago. He was informed there they would have their attorney look into the matter. He never could find the head man. He had two conversations with a man he presumed to be the bookkeeper about this matter. In May, 1950, Webb brought him a receipt showing the car had been picked up and he paid Webb $1670 and took his receipt and release therefor.

The record discloses Robert J. Allen, from whom the latter corporation purchased the automobile, held a certificate of title for said automobile issued by the State of Illinois and that he obtained a new certificate of title from the Secretary of State of Indiana. (This man Allen was originally named as a defendant herein, but the record shows he was not served with process and the trial court dismissed as to him. His address on the Indiana certificate of title was given as 317 Peoples Bank Building, Indianapolis, Indiana.) The serial number and motor number were verified by a peace officer as required by our statute.

It was disclosed that at the time of the trial the books and records of the latter corporation were kept at the office of appellant. It was not then actively engaged in business. On the date of the sale to appellee the office of the bookkeeper of both corporations was at the North Meridian Street address.

Appellant first contends there is an absolute lack of evidence that appellee purchased the automobile in question from it. On the contrary, the record discloses such purchase was made from the latter corporation;

that it had the right under its denial to show appellee did not make such purchase from it but purchased it from the latter corporation. Second, it says there is no competent evidence of probative value to show said automobile was stolen; that appellee was not entitled to recover anything from it. Therefore, the damages assessed were excessive and the amount of recovery is too large. Finally, it contends the trial court erred in admitting in evidence the receipt and release of Webb to appellee because it was self-serving, denied appellant the opportunity of cross-examination, and was an instrument made by a third party.

In support of its first contention appellant says the evidence shows it was a separate and distinct legal entity from the latter corporation; that its status was unaffected by the fact the officers and stockholders of both corporations were the same, citing as authority *Hart, Schaffner & Marx* v. *Campbell* (1941), 110 Ind. App. 312, 320, 38 N. E. 2d 895; *Benner-Coryell Lbr. Co.* v. *Ind. Unemp. Comp. Bd.* (1940), 218 Ind. 20, 28, 29 N. E. 2d 776, and, 13 Am. Jur. 160, §7. We agree that is generally true. However, the question before the court for decision in those cases was entirely different from the question presented herein.

It is significant to note that in the Hart, Schaffner & Marx case, *supra,* this court said:

"This court has recognized that there are cases where, to prevent fraud or injustice, it is necessary to disregard the fiction of distinct corporate existence, and to hold as a matter of equity that such separate legal entity does not exist. *Feucht* v. *Real Silk Hosiery Mills, Inc.* (1938), 105 Ind. App. 405, 12 N. E. 2d 1019. But in cases involving the rights of third persons, this doctrine has been limited in its application *to the prevention of fraud and injustice.*" (Our emphasis).

In the Feucht case, *supra,* this court said:

"It is also recognized in principle that the fiction of corporate entity may be disregarded where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation. *Trustees System Co., of Pennsylvania* v. *Payne* (1933), 65 Fed. Rep. 2d 103".

The Benner-Coryell case, *supra,* is not applicable to the facts herein.

In 13 Am. Jur., §7, p. 160, it is stated:

"The doctrine that a corporation is a legal entity existing separate and apart from the persons composing it is a legal theory introduced for purposes of convenience and to subserve the ends of justice. *The concept cannot, therefore, be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of this policy, will be disregarded by the courts.* Thus, in an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical, the corporate entity being disregarded where used *as a cloak or cover for fraud or illegality"*. (Our emphasis)

Where a party permits another to use his firm name, he is liable to others who do business with that person who do not know the true facts. *Elverson et al.* v. *Leeds, et al.* (1884), 97 Ind. 336, 338, 339.

In the case of *Wiggam Milk Co.* v. *Johnson* (1938), 213 Ind. 508, 13 N. E. 2d 522, appellee brought an action against Wiggam Milk Co., Inc. The sheriff's return showed summons was served on Wiggam Milk Company Incorporated by reading the writ to Thomas B. Wiggam, president of said Company. The defendant appeared and filed answer of general denial. Subsequently, by agreement of the parties, judgment was entered against Wiggam Milk Com-

pany Inc. in favor of appellee for $450.00. Thereafter, at another term of court appellee filed a verified petition to modify the judgment in which the appellant denied it was a corporation and the true name of appellant was Wiggam Milk Company, and asked the court to change the name in the judgment to the correct name. Over objection of appellant the court sustained the petition. In affirming the action of the trial court, the Supreme Court said:

> "Appellant, at the time it entered its appearance in said cause and filed answer in general denial, knew that the defendant was designated as the 'Wiggam Milk Company, Inc.' and knew that the judgment was entered accordingly. It is clear from all the facts who was intended to be sued. Appellant by its action recognized that it was the real defendant in the action. It might be concluded that appellant conceived the notion that by permitting judgment to be entered against the 'Wiggam Milk Company, Inc.' it would be able to escape, and that its property would not be subject to execution because no property could be found in the name of the 'Wiggam Milk Company Incorporated,' and, therefore render fruitless plaintiff's judgment. *If this were true this court would not affirm or assist in such 'sharp practice', but on the contrary would condemn it in severest terms"*. (Our emphasis).

While the factual situation in that case is different, the principle there announced applies directly to the question before us in this case. See also, *Montgomery* v. *Polk Milk Co. et al.* (1948), 118 Ind. App. 433, 438, 439, 79 N. E. 2d 108 (Transfer denied) ; *The Bloomfield Railroad Co.* v. *Burress* (1881), 82 Ind. 83.

As heretofore indicated, appellant was organized as a corporation prior to the latter corporation. Therefore, it must be assumed that pursuant to the provisions of §25-203, Burns' 1948 Replacement, appellant filed its verified written consent to the

latter corporation to use its name. Appellee was told by an employee of both corporations to make his check payable to appellant and he so did. The check was received and deposited under the direction of the book-keeper of both companies. The business at the North Meridian Street address was conducted under various names beside that of the latter corporation. Appellant's officers and employees transacted business from this place and at the time of the transaction involved herein its books and records were kept there. Appellant's secretary received summons. It entered its appearance in this cause and defended this action in its name and then during the trial asserted it did not make the sale. The whole record herein indicates the business of these corporations was conducted in such amanner that innocent third parties had no way of knowing with which they were dealing. They could only rely on the word of the officers and employees of these companies. That is what happened in this case. Under such circumstances it would be an open invitation to fraud and injustice to say appellant can now escape liability because it asserts the latter corporation made the sale. The law will not tolerate such chicanery. Under the authorities cited above, we are of the opinion the entity of these corporations for the purpose of this case was merged.

In support of its second contention appellant asserts there is no competent evidence in the record which establishes the automobile involved here was a stolen car; that there is affirmative evidence that Robert J. Allen, from whom it purchased the automobile, held a certificate of title from the State of Illinois and he obtained a new certificate from the State of Indiana, and therefore it had the right to "rely upon such certificates of title and the ownership therein vouched for." Citing: *Nichols* v. *Bogda Motors, Inc.* (1948), 118 Ind. App. 156, 159, 77 N. E. 2d 905, and

*Rocco* v. *Server et al.* (1929), 89 Ind. App. 457, 459, 165 N. E. 335. Neither of these cases are germane to the question presented here. Certificates of title (registration) issued by the Secretary of State are not in themselves proof of ownership to such automobiles. *Meskiman* v. *Adams* (1925), 83 Ind. App. 447, 449, 149 N. E. 93; *Central Finance Co. of Peru, Inc.* v. *Garber* (1951), 121 Ind. App. 27, 31, 97 N. E. 2d 503.

The record herein discloses appellee testified without objection that the F.B.I. informed him the car was stolen; that on two occasions he told appellant's employees of this and they told him they would take it up with their attorney; that Webb, who purchased the car from him, brought him a receipt from the Chief of Police of Athens, Ohio showing they had picked up the car and he then paid Webb the sum of $1,670.00.

Appellee concedes that some of this evidence might have been excluded as hearsay if proper objection had been made. He contends that since it was admitted without objection the trial court had a right to consider it. We believe this is a correct statement of the law. *Metropolitan Life Insurance Co.* v. *Lyons* (1912), 50 Ind. App. 534, 98 N. E. 824; *Indianapolis Blue Print and Manufacturing Company* v. *Kennedy et al.* (1939), 215 Ind. 409, 19 N. E. 2d 554; *Fetter et al.* v. *Powers et al.* (1948), 118 Ind. App. 367, 381, 78 N. E. 2d 555 (Transfer denied). In 104 A.L.R. 1130, in a headnote on this subject, it is stated:

"It has been held almost universally (apparently only four or five jurisdictions taking a contrary view, as will be noted) that when hearsay testimony is admitted without objection it may properly be considered and given its natural probative effect as if it were in law admissible, the only question being with regard to how much weight should be given thereto."

This is followed with two pages of citations from the various appellate tribunals of the United States and the States.

Appellant cites the case of *Craig, Executrix* v. *Citizens Trust Company et al.* (1940), 217 Ind. 434, 445, 26 N. E. 2d 1006, which held that evidence admitted without objection which had no probative value did not gain the dignity of evidence having probative value by reason of such admission. We agree. In that case the court did recognize the rule we have followed here.

We are of the opinion the evidence last referred to had probative value and could be considered by the court and was sufficient to prove the automobile was stolen.

After the last mentioned evidence had been admitted without objection the trial court admitted, over the objection of appellant, a written release and receipt from Webb to appellee which, in substance, recited the facts set out above. Conceding without deciding this was improper, appellant was not harmed thereby because other uncontradicted evidence of the same character had been previously admitted without objection.

Finally, appellant's only claim that the damages assessed by the court are excessive and that the amount of recovery is too large is that appellee is not entitled to recover anything. This contention is disposed of by this court's holding as to the other specifications of the motion for a new trial. *Clarke Auto Co., Inc.* v. *Reynolds* (1949), 119 Ind. App 586, 593, 88 N. E. 2d 775. The sum of $1510.00 was the actual amount paid by appellee to appellant when he purchased the car from the appellant.

We find no reversible error and are of the opinion a right and just result was reached.

Judgment affirmed.

NOTE.—Reported in 116 N. E. 2d 532.