**GENERAL FINANCE CORPORATION, Defendant-Appellant,**

v.

**Madonna SKINNER, Plaintiff-Appellee.**

**No. 1–380A67.**

Court of Appeals of Indiana, First District.

Sept. 29, 1981.

James S. Kirsch, Kroger, Gardis & Regas, Indianapolis, for defendant-appellant.

Hansford C. Mann, Max E. Goodwin, Mann, Chaney, Johnson, Hicks & Goodwin, Terre Haute, for plaintiff-appellee.

NEAL, Presiding Judge.

Defendant-appellant General Finance Corporation (GFC) appeals the denial of its amended motion for relief from a default judgment entered in the Vigo Superior Court alleging insufficient service of proc-

ess. The trial court awarded plaintiff-appellee Madonna Skinner (Skinner) $5,000 compensatory damages, and $50,000 punitive damages under Count I, and $4,000 compensatory under Count II.

We affirm.

## STATEMENT OF THE FACTS

The facts most favorable to the judgment disclose on July 21, 1978, Skinner filed a complaint against GFC concerning certain insurance benefits she had not received while disabled and unable to make loan payments. Skinner had refinanced a pre-existing loan from General Finance Corporation of Indiana (GFC of Ind.), and had purchased credit disability insurance on her new loan balance which would cover loan payments should she become disabled. Service of process of the Summons and Complaint was made by registered mail and addressed to:

General Finance Corporation
c/o C. T. Corporation Systems
1011 Merchants Bank Building
Indianapolis, IN. 46204

C. T. Corporation Systems (C.T.) was the registered agent for GFC of Ind. C.T. returned the Summons and Complaint to the Clerk of the trial court with a letter stating it was not the resident agent for GFC.

On September 5, 1978, Skinner filed a motion for default upon which the trial court entered an order of default. Subsequently, a hearing was held to determine damages; however, no one appeared for GFC. Thereafter, on March 8, 1979, the trial court awarded Skinner $59,000 in damages.

The principal question to be decided in this appeal is the validity of the service of Summons. The suit was filed against "General Finance Corporation," and process was issued to C.T. as resident agent. On the records of the Secretary of State's office, C.T. was resident agent for a separate corporation known as "General Finance Corporation of Indiana." Insomuch as GFC had not been admitted it had no resident agent formally designated. Resolution of the question necessitates an analysis of the

interrelation of the structure as well as the operation of the two corporations.

GFC of Ind. is a Delaware Corporation admitted to do business in Indiana. Its business is that of a loan company, and it has 42 offices in Indiana. C.T. is its resident agent, but GFC of Ind. does not seem to have a principal office, and its principal officers and directors all reside in Illinois. GFC is likewise a Delaware Corporation, but it is not admitted to do business in Indiana, and its principal office is in Evanston, Illinois. GFC of Ind. is a wholly owned subsidiary of GFC which, in addition, owns 25 other loan companies having "General Finance Corporation" as their name in as many states. In all, there are in excess of 400 loan offices throughout the United States operating under the general umbrella of GFC. The President and Secretary-general counsel of GFC and GFC of Ind. are the same persons. The general supervisor of GFC of Ind., Joe A. Simala, is an assistant vice president of GFC, and is paid and appointed by its officers. GFC is wholly owned by CNA Financial Corporation (CNA), a financial conglomerate, which controls directly or indirectly 60 or more other substantial corporations exclusive of the 26 subsidiaries of GFC. CNA, in turn, is controlled by Loews Corporation. Mr. Stan Ginsberg is the corporate lawyer for both GFC and GFC of Ind., and maintains offices with GFC in Evanston.

A checking account is maintained with the Continental Illinois National Bank and Trust Company of Chicago, Illinois in the name of "General Finance Corporation and/or subsidiaries," and the checks are imprinted with that legend. All loan proceeds for loans initiated by GFC of Ind. and other subsidiaries are issued by check from that account by GFC. All payrolls for GFC of Ind. and the other subsidiaries are paid from that account by GFC. A computer terminal at GFC of Ind. transmits all transactions to the GFC office in Evanston simultaneously with the making of a loan, and all accounting is done by GFC. All credit disability insurance is screened through the GFC home office, and all rec-

ords of insurance are kept there. Mr. Reedy, the manager of the Terre Haute GFC of Ind. office, referred to GFC in Evanston as the "home office," and testified that he relied upon the home office for instruction and advice on loans as well as insurance matters. In fact, one Mr. Cunningham, in relation to this matter with Skinner, instructed Reedy not to issue any further insurance coverage to her. Throughout its brief, GFC makes reference to "home office" and "branch office" in describing the relationship between GFC and GFC of Ind.

The Terre Haute loan office (GFC of Ind.) used a letterhead which bore the inscription "General Finance Corporation." The Terre Haute area telephone directory contained for many years the advertising of "General Finance Corporation," not "General Finance Corporation of Indiana." GFC, from its Evanston office, without prior consultation with the Terre Haute office, placed advertisements in the Terre Haute area; certain advertising letters to so-called preferred customers bore, in addition to the heading "General Finance Corporation," a stamp which said "General Finance Corporation, 426 Wabash Avenue, Terre Haute, In." No mention is made of "General Finance Corporation of Indiana." In the customer's loan payment book there appears the statement that "there are over 400 General Finance and General Finance Corporation offices from coast to coast and you have earned a special priority at whatever one you choose." The sign attached to the Terre Haute office reads "friendly Bob Adams service, General Finance Loans." Mailings of advertisements, called stuffers, which are printed and sent from GFC offices in Evanston, merely refer to GFC, but are circulated locally in the Terre Haute area. The Bob Adams logo is a nationwide trademark of GFC.

GFC filed 45 lawsuits in Vigo County to collect defaulted loans which were, in name, made by one of its subsidiaries, and reduced 41 of them to judgment, 32 by default. Each Complaint alleged that the money was borrowed from GFC. Among these, were some loan agreements that were made out of state by another GFC subsidiary. No assignment of the loans was reflected in the loan documents.

In the instant case, the note and mortgage executed by Skinner was made payable to GFC of Ind., but the Financing Statement filed in the office of the recorder of Vigo County shows the secured party to be "General Finance Corporation." Further, the disability insurance policy prepared by the Terre Haute office reflected that "General Finance Corporation and Subsidiaries" was the Creditor/Policy Holder. Collection letters were sent to Skinner and her employer by the Terre Haute office after the notice of her disability, and were written on the letterhead stationery of "General Finance Corporation," and signed by Mr. Reedy of the Terre Haute office.

### ISSUES

GFC raises six issues on appeal. In its brief, GFC's entire discussion centers upon Issue I. As appellant states in its brief, ". . . the six issues set out in this Brief derive from a single source—the sufficiency of service of process. If the service was not sufficient, all issues presented must necessarily be resolved in favor of the Defendant-Appellant, General. For such reason, General has combined its discussion of the six issues into a single argument." Therefore, resolution of Issue I is dispositive. GFC states the issues:

I. "Was the mailing of the Complaint and Summons to C.T. Corporation Systems sufficient service of process upon the Defendant-Appellant General Finance Corporation?"

II. "Was the Defendant-Appellant General Finance Corporation denied a fair trial by irregularities in the proceedings?"

III. "Did the entry of default against the Defendant-Appellant General Finance Corporation constitute an abuse of discretion by the trial court?"

IV. "Did the entry of default and judgment against the Defendant-Appel-

lant General Finance Corporation result from accident or surprise which ordinary prudence could not have prevented?"

V. "Was the entry of default and judgment against the Defendant-Appellant General Finance Corporation contrary to law?"

VI. "Is the judgment against the Defendant-Appellant General Finance Corporation void because of lack of jurisdiction over the person?"

## DISCUSSION

GFC argues: General Finance Corporation is not admitted to do business in Indiana. GFC of Ind. is a chartered and licensed Indiana corporation and a subsidiary of the parent, GFC. C.T. is the resident agent of GFC of Ind., but not the resident agent of GFC. Therefore, GFC argues, service of process on C.T. did not amount to sufficient service on GFC. In support of its argument, GFC cites Ind. Rules of Procedure, Trial Rule 4.6(A)(1) and Ind.Code 23–3–3–1.

T.R. 4.6(A)(1) requires, in service upon organizations, that it be made on the executive officer or the lawfully appointed agent of the corporation. Ind.Code 23–3–3–1 provides that for a foreign corporation not admitted to do business in this state, who transacts or does business in this state, service of process shall be made on the Secretary of State, acting as agent for such foreign corporation.

Because Skinner did not serve process on the Secretary of State, but rather served on the agent of another corporation, GFC contends that service was insufficient on it. Sufficient service of process, GFC states, demands that the means utilized be reasonably calculated to inform the parties of the proceedings. *Mullane v. Central Hanover Bank & Trust Co.*, (1950) 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; *Mueller v. Mueller*, (1972) 259 Ind. 366, 287 N.E.2d 886. In *Mullane, supra*, 339 U.S. at 314–315, 70 S.Ct. at 657–658, the Supreme Court of the United States stated:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

\* \* \* \* \* \*

But when notice is a person's due, process which is a mere gesture is not due process. *The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected,* compare *Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, with *Wuchter v. Pizzutti*, 276 U.S. 13, [48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230], or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes."
(Citations omitted, emphasis added.)

As GFC correctly states, Indiana tribunals have likewise recognized the constitutional imperative of notice "reasonably calculated to apprise the party of the pending action." *Matter of Murray*, (1977) 266 Ind. 221, 362 N.E.2d 128; *Glennar Mercury-Lincoln, Inc. v. Riley*, (1975) 167 Ind.App. 144, 338 N.E.2d 670; *Kujaca v. Kujaca*, (1973) 159 Ind.App. 6, 304 N.E.2d 870.

Continuing its argument, GFC contends that upon C.T.'s return of the Summons and Complaint with its letter, Skinner must have known that the means chosen by her to notify GFC of the action against it were defective. Skinner did not use the best available method of service. *Mueller, supra*. The trial court's order of default against it was void because process was not served, and therefore the trial court had not acquired personal jurisdiction over GFC.

In entering its judgment of default, the trial court had found that service of process on C.T., agent of GFC of Ind.,

was sufficient notice to GFC of Skinner's cause of action. The trial court has considerable discretion in entering a judgment of default. *Green v. Karol*, (1976) 168 Ind. App. 467, 344 N.E.2d 106. Therefore, the trial court's decision will be reversed only upon a showing of a clear abuse of that discretion, *Erdman v. White*, (1980) Ind. App., 411 N.E.2d 653. *Green, supra*. However, as GFC asserts in its brief, default judgments are not favored in the law for they are rendered without a trial of any issue of law or fact. *Cua v. Ramos*, (1981) Ind.App., 418 N.E.2d 1163; *Davis v. Davis*, (1980) Ind.App., 413 N.E.2d 993. Generally, any doubt as to a default judgment's propriety must be resolved in favor of the defaulting party. *Henderson v. American Optical Co.*, (1981) Ind.App., 418 N.E.2d 549. As Judge Hoffman said in *Keiling v. McIntire*, (1980) Ind.App., 408 N.E.2d 565, at 566, "[w]here a default has been taken against a person who has not been served with process and who thus has no notice of the institution of the action against him, such person is entitled to have the judgment set aside." (Footnotes omitted.)

Indiana Rules of Procedure, Trial Rule 4.15(F) provides:

"No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond."

In *Mueller, supra*, 287 N.E.2d at 889, the Indiana Supreme Court said:

"Thus, it can be seen that the notice should be such as is reasonably calculated to inform defendant of the pending proceedings. In making this determination we must decide whether the best method possible has been utilized. A certain method is sufficient if no other method better calculated to give notice is available but is insufficient if another method obviously better calculated to give notice is available."

It is true that GFC and GFC of Ind. are separate legal entities insofar as their incorporation documents are based upon separate charters and do not make reference to another. Though they may be two separate corporate entities on paper, only one commonly-owned enterprise exists as the facts plainly disclose. All business of the Terre Haute office of GFC of Ind. is transmitted and processed by GFC. GFC instructed GFC of Ind. not to issue Skinner any more credit disability insurance should she decide to take out another loan. The branch manager, Mr. Reedy, testified he was bound to follow such an instruction of GFC, the home office. The names "General Finance Corporation" and "General Finance Corporation of Indiana" are used interchangeably on many written particulars mailed and handed to loan customers. The Terre Haute office of GFC of Ind. frequently represents itself on business letters, advertising and mailings to customers as "General Finance Corporation." Joe Simala, Assistant Vice President of General Finance Corporation, testified he "was" GFC of Ind., and as such could fire the Terre Haute office manager at will if necessary.

In support of the judgment that sufficient service of process was made, Skinner cites *Glennar Mercury-Lincoln, Inc., supra; Sheraton Corporation of America v. Kingsford Packing Company, Inc.*, (1974) 162 Ind. App. 470, 319 N.E.2d 852; *Merriman v. Standard Grocery Co., Inc.*, (1968) 143 Ind. App. 654, 242 N.E.2d 128; *Clarke Auto Co., Inc. v. Fyffe*, (1954) 124 Ind.App. 222, 116 N.E.2d 532.

In *Clarke Auto Co., Inc., supra*, one corporation, with the permission of another corporation, used the latter's name in doing business with a third party. Though service of process was not at issue, the court, in *Clarke, supra*, at 228, 116 N.E.2d 532, recognized the equitable principle as stated in *Feucht v. Real Silk Hosiery Mills, Inc.*, (1938) 105 Ind.App. 405, 12 N.E.2d 1019, "that the fiction of corporate entity may be disregarded where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." (Citation omitted.)

The court in *Clarke, supra*, 124 Ind.App. at 230, 116 N.E.2d 532, further stated: "The whole record herein indicates the business of these corporations was conducted in such a manner that innocent third parties had no way of knowing with which they were dealing. They could only rely on the word of the officers and employees of these companies. That is what happened in this case. Under such circumstances it would be an open invitation to fraud and injustice to say appellant can now escape liability because it asserts the latter corporation made the sale. The law will not tolerate such chicanery. Under the authorities cited above, we are of the opinion the entity of these corporations for the purpose of this case was merged."

In *Merriman, supra*, plaintiffs brought a personal injury action against a subsidiary, which did not own or lease the store, instead of the lessee parent corporation. The trial court did not permit plaintiffs to amend their complaints to show the proper party. On appeal, this court, reversing, stated:

"We believe it necessary to indulge in the presumption that large corporations often deliberately structure the parent and wholly-owned subsidiaries of the parent corporation in such a complex and inter-related manner so as to prevent ascertainment of exactly which corporate entity shoulders the responsibility of liability to injured individuals.

\* \* \* \* \* \*

Further, this court is of the opinion that National is estopped to deny that Standard is an entirely separate corporate entity when it advertised to the general public by signs, etc. that the store in question was a 'Standard' store when National had failed to file its use of an assumed business name as required by Burns' Ind.Stat., § 50–201, *supra*.

Several decisions of our courts have declared that certain factual situations require that this court disregard the fiction of distinct corporate existence. . . .

\* \* \* \* \* \*

It is undisputed that Standard is a wholly-owned subsidiary of National and that the principal officers of both corporations are the same. It is our opinion that these facts alone provide ample incentive for disregarding the fact that Standard is a separate corporate entity."

143 Ind.App. at 657–659, 242 N.E.2d 128. Though this case did not face the legal issue before us now, it is important to note that Indiana courts have disregarded the distinction of separate incorporation to prevent an injustice. In *Merriman, supra*, at 657–658, 242 N.E.2d 128, the court further said:

"[W]here it appears, as it does in the case at bar, that several corporations exist in an interdependent relationship being wholly owned, operated, and managed by a superior corporate entity with the goal of accomplishing one general business purpose, the parent should shoulder the liability, and the right to relief should not be denied even though a procedural complexity would seem to prevent relief."

In a breach of contract action brought by a meat supplier against a Sheraton Hotel, the Court of Appeals in *Sheraton Corporation of America, supra*, 319 N.E.2d at 857, held that Sheraton was estopped to deny that it and its corporate franchisee are a single entity. In discussing the elements necessary to establish equitable estoppel, the court said:

"[T]he contractual scheme under consideration here was intended by Sheraton to operate so as to allow it to deal in its own name with no indication to third parties that it and its employees acted as the agent of Investment Company, presumably with no liability to itself by reason of the separate corporate entities involved.

Thus it appears that Sheraton knowingly permitted its trade name to be used in the course of business by a separate entity without qualification or indication of separate ownership, actively assisted that separate entity to appear identical to Sheraton in terms of physical facilities, management, services, and policies, and actively participated in the operation and

management of such separate business entity."

In the most recent case, *Glennar Mercury-Lincoln, Inc., supra,* appellant contended that service of process was upon the wrong party. In that case, a default judgment was entered against Glennar Mercury-Lincoln, Inc. where service wrongly was made upon Glenn R. Pitman, Inc. instead of Glenn R. Pitman, who also happened to be the resident agent of Glenn R. Pitman, Inc. Of serving process on the right party by the wrong name, this court, in reciting the general rule, said:

" '[I]f process is really served on the person intended to be sued, although a wrong name is given him in the writ and return, and he suffers a default, or omits to plead the misnomer in abatement, he is bound by the judgment rendered against him.' 49 C.J.S. *Judgments* § 24g, p. 62; *see also Kingen v. Stroh* (1894), 136 Ind. 610, 36 N.E. 519; *Vogel v. Brown Twp.* (1887), 112 Ind. 299, 14 N.E. 77; *Johnson v. Patterson* (1877), 59 Ind. 237.

\*   \*   \*   \*   \*   \*

Here the degree of compliance by Riley was so substantial that the trial court could have reasonably found that '[t]he means [of service] employed [were] such as one desirous of actually informing [Glennar] might reasonably adopt to accomplish it.' *Mullane, supra* [339 U.S.], at 315 [70 S.Ct. at 657]."

167 Ind.App. at 151, 153, 338 N.E.2d 670.

█ These cases show that Indiana courts refuse to recognize corporations as separate entities where the facts establish several corporations are acting as the same entity. *Sheraton Corporation of America, supra; Merriman, supra; Clarke Auto Co., Inc., supra.* While, with the exception of *Glennar Mercury-Lincoln, Inc., supra,* these cases do not address the issue of service of process, they illustrate the willingness of Indiana courts to support substance over form, facts over "procedural complexity" where justice deserves.

In our own research on service of process upon a corporate entity used as a mere instrument in a parent-subsidiary relationship, we have not been able to find any Indiana cases. However, other jurisdictions have recognized that where the parent corporation exercises such a degree of control over its subsidiary that the activities of the subsidiary were, in fact, the activities of the parent within the state, substituted service of process on the subsidiary is sufficient service on the parent. *Tiger Trash v. Browning-Ferris Industries, Inc.,* (7th Cir. 1977) 560 F.2d 818; *Wells Fargo & Company v. Wells Fargo Express Company,* (9th Cir. 1977) 556 F.2d 406; *Professional Investors Life Insurance Company, Inc. v. Roussel,* (D.C.Kan.1978) 445 F.Supp. 687; *W. Clay Jackson Enterprises, Inc. v. Greyhound Leasing and Financial Corporation,* (D.C. Puerto Rico 1977) 431 F.Supp. 1229; *Stith v. Manor Baking Company,* (W.D.Mo.1976) 418 F.Supp. 150; *Captain International Industries, Inc. v. Westbury, Chicago, Inc.,* (N.D.Ill.1975) 416 F.Supp. 721; *Stanley Works v. Globemaster, Inc.,* (D.C.Mass.1975) 400 F.Supp. 1325; *Freeman v. Gordon and Breach, Science Publishers, Inc.* (S.D.N.Y. 1975) 398 F.Supp. 519; *Tokyo Boeki (U.S. A.), Inc. v. S.S. Navarino,* (S.D.N.Y.1971) 324 F.Supp. 361; *Mathes v. P.T. National Utility Helicopters Ltd.,* (1977) 68 Cal. App.3d 182, 137 Cal.Rptr. 104; *Society Milion Athena v. National Bank of Greece,* (1937) 2 N.Y.S.2d 155, 166 Misc. 190.

█ The mere fact that a wholly-owned subsidiary of a parent corporation is doing business in the forum state does not make the subsidiary the process agent of the parent. *Cannon Manufacturing Company v. Cudahy Packing Company,* (1925) 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; *Gravely Motor Plow & Cultivator Co. v. H.V. Carter Co., Inc.,* (9th Cir. 1951) 193 F.2d 158; *Echeverry v. Kellogg Switchboard & Supply Co.,* (2nd Cir. 1949) 175 F.2d 900. Furthermore, the use of a subsidiary corporation by a parent corporation as the instrumentality for doing business in a state does not necessarily subject the parent corporation to the jurisdiction of the subsidiary's state courts. *Cannon Manufacturing Co., supra;* 18A Fletcher Cyclopedia of Corporations § 8773 at 251 (1977).

■ The activities of the parent with the subsidiary must amount to more than a mere parent-subsidiary relationship to justify service on the subsidiary as service on the parent. *Cannon Manufacturing Co., supra; Tokyo Boeki (U.S.A.), supra; Volkswagenwerk Atkiengelselischaft v. McCurdy*, (1976) Fla.App., 340 So.2d 544; *Stoehr v. American Honda Motor Company, Inc.*, (D.C.Neb.1977) 429 F.Supp. 763. In *Fletcher, supra*, at 252–253, appears the following discussion:

"But where the parent company has complete control over the subsidiary, conducting its business and directing its policies, service on the subsidiary will bind the parent company. Thus, where it appears that the parent and subsidiary are so conducting their affairs that they are no longer separate entities but merely principal and agent in one organization, the fact that the corporate entities are formally separate is of no avail for purposes of exercising jurisdiction over the parent. Service is also sufficient where all the evidence shows that the parent manages and controls the subsidiary so that it is a mere adjunct and instrumentality of the parent. And where the evidence shows that all the expenses of the subsidiary and all the salaries of its officers are paid by the parent and it is little more than a 'bookkeeping arrangement,' service on the subsidiary is sufficient to bind the parent." (Footnotes omitted.)

In *Roussel, supra*, at 698, the district court was faced with one corporation's control of another and said:

"The rationale of the courts which have extended jurisdiction over a foreign parent corporation on the basis of a subsidiary's 'presence' within the state is that when the parent corporation exercises such control and domination over the subsidiary that it no longer has a will, mind, or existence of its own, and operates merely as a department of the parent corporation, both corporations should be treated as a single economic entity. In such a situation service of process on the subsidiary operates to extend jurisdiction over the parent."

In a New York case, *Society Milion Athena, supra*, 2 N.Y.S.2d at 163, the court recognized the "instrumentality rule" and stated:

"The mere fact that the entire stock of the local corporation is held by the foreign corporation, with one exercising control over the other through ownership of the stock, will not 'necessarily' make one the agent of the other to receive service of process.... *But where the local corporation is so controlled and its affairs so conducted that it is a mere instrumentality of the foreign corporation, the fiction of corporate entity may be disregarded and the service of process on the local corporation will constitute effective service on the foreign corporation.*" (Citations omitted, emphasis added.)

Following another theory, that of common law principal-agent, the Ninth Circuit United States Court of Appeals in *Wells Fargo & Company, supra*, at 419–20, said:

"There appears to be no reason why a completely independent, in-state corporation cannot be held to have acted as an agent for another, out-of-state corporation in performing activities giving rise to a cause of action..., and establishment of the requisite 'agency' control may be even easier when a parent-subsidiary relationship is involved. ... While the mere existence of a parent-subsidiary relationship has been held in itself to constitute insufficient evidence of control so as to subject the parent to service for the acts of the subsidiary under the agency rationale ..., if a common law agency is found to exist, the parent may properly be served...." (Citations omitted, footnotes omitted.)

■ In the case at bar, GFC of Ind. was restrained by GFC from further issuing Skinner credit insurance. The Terre Haute branch manager of GFC of Ind. was bound to follow the instructions of GFC. The general supervisor of GFC of Ind., Mr. Simala, was a salaried executive of GFC. There were many and varied documentary exhibits which showed that GFC of Ind.

freely used and assumed the name General Finance Corporation in the course of its daily business. And finally, there was the fact that GFC had instituted a multitude of lawsuits in Vigo County, Indiana, against defaulting Indiana loan customers.[1]

In light of the above, Skinner concludes GFC is estopped to assert that GFC of Ind. is an entirely separate corporation in fact when GFC of Ind. had advertised to the general public through its business forms, mailings, telephone directory listings and the sign attached to its building that it was doing business as GFC.

In view of this evidence and the cases cited above, we are of the opinion that GFC of Ind. and GFC are conducting one and the same business, and that GFC of Ind. is merely acting as a departmental branch of GFC. GFC of Ind. does not conduct its own business as an independent entity, but rather is maintained as an instrument of GFC. Therefore, when Skinner served process on C.T. in her action against GFC, it was sufficiently served notice of the action. In the instant case, we are faced with a parent-subsidiary dependence where business is clearly conducted as one enterprise, and where GFC has sought to employ the corporate vehicle to avoid the fact that it has been served notice of the lawsuit against it.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.

---

1. In a "Motion Requesting Court of Appeals to Take Judicial Notice," Skinner amended her brief to apprise us of the case of *Noel v. General Finance Corporation*, (1981) Ind.App., 419 N.E.2d 200, wherein General Finance Corporation filed suit against Noel for payment on a Note. As Skinner contends, no assignment of the Note to General Finance Corporation was either alleged or otherwise shown in the pleadings. From this, Skinner argues that it is reasonable to infer General Finance Corporation and General Finance Corporation of Indiana are, in fact, one and the same legal entity.